USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit For the First Circuit ____________________ No. 95-2178 UNITED STATES, Appellee, v. DWAYNE YOUNG, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] ___________________ ____________________ Before Cyr, Boudin and Stahl, Circuit Judges. ______________ ____________________ Karl R.D. Suchecki with whom Jennifer Petersen and Petersen & ___________________ _________________ ___________ Suchecki were on brief for appellant. ________ Andrea Nervi Ward, Assistant United States Attorney, with whom __________________ Donald K. Stern, United States Attorney, was on brief for appellee. _______________ ____________________ January 23, 1997 ____________________ STAHL, Circuit Judge. In May 1995, a jury STAHL, Circuit Judge. ______________ convicted defendant Dwayne Young on a single count of unlawful possession of a firearm by a felon, 18 U.S.C.  922(g)(1). During trial, and after denying Young's motion to suppress, the district court admitted the firearm and ammunition into evidence. The district court also admitted a so-called "turret tape," a recording of radio transmissions between a police officer and his dispatcher, made during the officer's foot pursuit of Young.1 Finally, the district court allowed the jury to use a government-prepared transcript as an aid in listening to the tape while it was being played during trial. Finding no error, we affirm. Background Background __________ On April 7, 1994, Officers James Fee and Robert Twitchell of the Boston Police Department, while patrolling the Roxbury section of Boston, received a radio broadcast describing three individuals suspected of armed robbery. Several blocks from the last reported location of the suspects, the officers noticed a group of three men standing together. Upon seeing the unmarked cruiser, the group dispersed. One of the three, Young, walked in one direction  ____________________ 1. The term "turret tape" refers to recordings of radio broadcasts between Boston Police officers and dispatchers. Specifically, "turret" derives from the fact that the communications facility which records such transmissions resides in aturret tower at the Boston Police headquarters.  -2- 2 by himself while the other two departed together in another direction.  The officers, noting that Young's short height and black clothing appeared to match the description of one of the robbery suspects, pulled their cruiser to the curb alongside Young. From the passenger seat, Officer Twitchell rolled down his window and announced "Boston Police, you got a minute?" to which Young responded "Sure." Young then "angled" toward the rear of the cruiser. As Young approached the car, the officers noticed the handle of a handgun protruding from his waistband. Officer Twitchell lunged at Young through the window of the cruiser, made fleeting contact with his jacket or belt, but failed to either grab the gun or detain him. Young turned and ran from the cruiser, with Twitchell, now on foot, in pursuit. During the pursuit, Officer Twitchell saw Young remove the gun from his waistband and throw it into the basement stairwell of a building on Elm Street. Although Young successfully eluded Twitchell, he was ultimately apprehended by a back-up police officer who found him hiding in a nearby garage. Officer Twitchell then returned to the stairwell and recovered the gun. While these events were unfolding, Officer Twitchell and other officers continuously transmitted information to the dispatcher at the Boston -3- 3 Police headquarters. These transmissions comprise the turret tape.  Prior to trial, Young moved to suppress the gun and the turret tape. Young asserted that the police recovered the gun through a violation of his Fourth Amendment rights, and argued that the tape constituted inadmissible hearsay. The district court denied Young's motion to suppress the gun, but granted his motion with respect to the turret tape, with the caveat that defense counsel's cross examination might subsequently render it admissible. During trial and after defense counsel's cross examination of Officer Twitchell, the district court admitted the turret tape as a prior consistent statement, and allowed the jury to use a transcript prepared by the government, as an aid in listening to the turret tape. Young appeals admission of the gun and tape, as well as use of the transcript. Discussion Discussion __________ A. Suppression of the Gun __________________________ We employ a dual standard in reviewing motions to suppress. We review the district court's findings of fact for clear error. See United States v. Bartelho, 71 F.3d 436, ___ _____________ ________ 441 (1st Cir. 1995). "A clear error exists only if, after considering all of the evidence, we are left with a definite and firm conviction that a mistake has been made." United ______ States v. McCarthy, 77 F.3d 522, 529 (1st Cir.), cert. ______ ________ _____ -4- 4 denied, 117 S. Ct. 479 (1996). Deference to the district ______ court's findings of fact reflects our awareness that the trial judge, who hears the testimony, observes the witnesses' demeanor and evaluates the facts first hand, sits in the best position to determine what actually happened. See United ___ ______ States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). By ______ ______ contrast, we review conclusions of law de novo and subject _______ the trial court's constitutional conclusions to plenary review. See id.; see also Ornelas v. United States, 116 S. ___ ___ ___ ____ ________________________ Ct. 1657, 1663 (1996). Determinations of probable cause and reasonable suspicion, relevant to the constitutionality of law enforcement seizures and arrests under the Fourth Amendment, present mixed questions of law and fact which we review de novo. See Ornelas, 116 S. Ct. at 1663.  __ ____ ___ _______ Young argues that the district court erred by concluding that recovery of the firearm did not occur through conduct that violated his Fourth Amendment rights. Specifically, Young contends that Officers Twitchell and Fee lacked either the reasonable suspicion needed to stop him, or the probable cause required for an arrest. We disagree. Interaction between law enforcement officials and citizens generally falls within three tiers of Fourth Amendment analysis, depending on the level of police intrusion into a person's privacy. The first or lowest tier encompasses interaction of such minimally intrusive nature -5- 5 that it does not trigger the protections of the Fourth Amendment. The Supreme Court has repeatedly emphasized that not all personal intercourse between the police and citizens rises to the level of a stop or seizure. See Florida v. ___ _______ Bostick, 501 U.S. 429, 434 (1991) (citing cases). Police may _______ approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment. See id.; United States v. Manchester, 711 F.2d 458, 460 (1st ___ ___ _____________ __________ Cir. 1983). Such police engagements need not find a basis in any articulable suspicion. See Bostick, 501 U.S. at 435. ___ _______ Police conduct falls short of triggering Fourth Amendment protections when, from the totality of the circumstances, we determine that the subject of any police interaction would have felt free to terminate the conversation and proceed along his way. See Bostick, 501 U.S. at 439; United States ___ _______ _____________ v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994). The totality of the ______ circumstances in this case establishes that any interaction between the officers and Young prior to Officer Twitchell's lunge falls well within the first tier of police-citizen interaction, and therefore, fails to trigger the protections of the Fourth Amendment. As they pulled alongside Young, the officers identified themselves as Boston Police officers, and asked "got a minute" to which Young replied "sure." The district court credited the officers' testimony, and we detect no clear error. We recently determined that conduct -6- 6 virtually identical to what occurred in this case did not trigger the protections of the Fourth Amendment, and concluded that in the absence of an officer's exertion of physical force or an individual's submission to a show of authority, no seizure occurs. See Sealey, 30 F.3d at 10 ___ ______ (finding no Fourth Amendment seizure where police officers in a cruiser approached defendant and yelled "Hey Steven, what's up?") (citing California v. Hodari D., 499 U.S. 621 (1991)). __________ _________ We reiterate that conclusion with respect to the officers' conduct toward Young prior to Officer Twitchell's lunge. The remaining two tiers of Fourth Amendment analysis comprise de facto arrests requiring probable cause, __ _____ and lesser seizures generally known as investigative or Terry _____ stops, which require a lesser reasonable suspicion. An arrest occurs when an officer, acting on probable cause that an individual has committed a crime, detains that individual as a suspect. Probable cause exists when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime. See United States v. Maguire, 918 F.2d 254, 258 (1st Cir. ___ _____________ _______ 1990), cert. denied, Kavanagh v. United States, 501 U.S. 1234 _____ ______ ________ _____________ (1991). An investigative stop, also known as a Terry stop, _____ see Terry v. Ohio, 392 U.S. 1 (1968), occurs when a police ___ _____ ____ officer, acting on reasonable and articulable suspicion of -7- 7 criminal activity, briefly detains an individual to confirm or dispel his suspicion. See McCarthy, 77 F.3d at 529; ___ ________ United States v. Schiavo, 29 F.3d 6, 8 (1st Cir. 1994). _____________ _______ The government concedes, for purposes of this appeal, that when Officer Twitchell made contact with Young, he seized him for Fourth Amendment purposes. See, e.g., ___ ____ Zapata, 18 F.3d at 977 (indicating that officer's touching of ______ citizen during ongoing investigative stop establishes that seizure occurred). In the absence of further argument on this point, we proceed under the assumption that a seizure occurred in this case. Young contends that the officers either seized him without the requisite reasonable suspicion, or arrested him without the requisite probable cause. We conclude that to the extent the officers, through fleeting physical contact, seized Young, they did so well within the parameters of an investigative stop, and that the officers' actions do not rise to the level of an arrest requiring probable cause. With respect to investigative stops, the relevant question "is not whether the police had probable cause to act, but instead whether the actions taken were reasonable under the circumstances." McCarthy, 77 F.3d at 529. A ________ familiar two- pronged test guides this inquiry. We first must determine whether the officer's action was justified at its inception, and, if so, whether the action taken was -8- 8 reasonably related in scope to the circumstances which justified the interference. See id. at 530; United States v. ___ ___ _____________ Kimball, 25 F.3d 1, 6 (1st Cir. 1994). To satisfy the first _______ prong, "'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" Kimball, 25 F.3d at 6 (quoting Terry, 392 U.S. _______ _____ at 21). To satisfy the second prong, we examine the totality of the circumstances, see United States v. Walker, 924 F.2d ___ _____________ ______ 1, 4 (1st Cir. 1991), bearing in mind that "an officer may [] conduct a patdown search where the officer is justified in believing that the person is armed and dangerous to the officer or others," Schiavo, 29 F.3d at 8. According to the _______ district court, the following facts gave rise to reasonable suspicion necessary to temporarily detain Young: (1) the officers saw three individuals, one or more of whom appeared to match the description of three armed robbers who had been spotted in the area; (2) as they approached, one of the three (Young) walked away from the group; (3) Officer Fee told Officer Twitchell that he thought he recognized the person walking away (Young) as a "bad guy;" (4) upon asking Young to answer some questions, Young angled toward the rear of the car instead of directly toward the passenger window; and (5) as Young approached, both officers saw a gun in his waistband. Careful review of the record from which the -9- 9 district court drew these findings does not leave us with a "definite and firm conviction that a mistake has been made," McCarthy, 77 F.3d at 529, and those findings are not clearly ________ erroneous. We are satisfied, moreover, that these facts in their totality could give rise to the officers' reasonable suspicion that Young had been involved in criminal activity. We also conclude that Officer Twitchell's action, the lunge at Young, was reasonably related in scope to the circumstances. In agreeing with the district court we note that sight of the gun gave rise to a significant concern for the officers' and public's safety. See Walker, 924 F.2d at 4 ___ ______ (officer's concern for own safety is of "paramount importance" in assessing the appropriateness of the action taken). To open the door of the cruiser and question Young would have afforded Young an opportunity to use the gun, and could have placed the officers and any bystanders in harm's way.  To be sure, the officers did not determine whether Young carried the firearm legally prior to attempting to remove it or restrain him. As we have indicated, however, "'[c]onduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer.'" United States v. Stanley, 915 F.2d 54, 56 (1st _____________ _______ Cir. 1990) (quoting United States v. Bernard, 623 F.2d 551, _____________ _______ 560 (9th Cir. 1979)). "Weighing 'the limited violation of -10- 10 the individual's privacy against the opposing interests in crime prevention and detection and in the police officer's safety,'" United States v. Quinn, 815 F.2d 153, 156 (1st ______________ _____ Cir. 1987), we conclude that Officer Twitchell's lunge at Young, and the attendant physical contact, were reasonable in scope and the circumstances justified the intrusion. Young, however, argues that the physical contact resulting from Officer Twitchell's lunge elevated the encounter to a de facto arrest, which required probable __ _____ cause. We have recently rejected the contention that every incidence of physical contact, even de minimis, between a __ _______ police officer and a citizen, constitutes an arrest requiring probable case. See Zapata, 18 F.3d at 977 (indicating that ___ ______ police touching of individual does not necessarily elevate a seizure to an arrest). Parsing whether any given seizure constitutes an arrest or a lesser seizure, however, proves a difficult task. See id. at 975 (explaining that no ___ ___ scientific formula exists to distinguish between investigative stops and arrests). Police conduct will rise to the level of an arrest when "'a reasonable man in the suspect's position would have understood his situation,' in the circumstances then obtaining, to be tantamount to being under arrest." See id. (quoting Berkemer v. McCarty, 468 ___ ___ ________ _______ U.S. 420, 442 (1984)).  -11- 11 Factors that can elevate a non-arrest seizure to a de facto arrest requiring probable cause include extending an __ _____ investigative stop beyond the time necessary to confirm or dispel reasonable suspicion, and physically blocking the suspect's exit such that a reasonable person would not feel free to leave. See Maguire, 918 F.2d at 259. The use of ___ _______ guns and the presence of more than one police officer, however, do not necessarily convert an investigative stop into an arrest. See id. Above all else, our cases in this ___ ___ area evince the fact specific nature of the inquiry. See, ___ e.g., Kimball, 25 F.3d at 6 ("Whether police activity is ____ _______ reasonable in any particular context depends on the facts which are unique to that incident.").  By lunging at and brushing his hand against Young, Officer Twitchell did not impose "'restraints comparable to those of a formal arrest.'" Quinn, 815 F.2d at 156 (quoting _____ Berkemer, 468 U.S. at 441). The officers did not restrain ________ Young's freedom of movement or succeed in detaining him even briefly. Nor did the officers ever communicate verbally to Young that he was under arrest or that they wanted to arrest him. Under those circumstances, no reasonable person in Young's position could have understood his situation "to be tantamount to being under arrest." Zapata, 18 F.3d at 975. ______ In light of police conduct we have determined to fall short of de facto arrest, we affirm the district court's conclusion __ _____ -12- 12 that Officer Twitchell's de minimis physical contact with __ _______ Young did not effect an arrest. Cf. Zapata, 18 F.3d at 977 ___ ______ (holding that de minimis physical contact did not convert __ _______ investigative stop into arrest); Quinn, 815 F.2d at 156-57 _____ (holding that presence of several officers and the blocking of defendant's car did not convert investigative stop into arrest); United States v. Trullo, 809 F.2d 108, 113 (1st _____________ ______ Cir.) (holding that police officer's use of drawn gun did not convert investigative stop into arrest); cert. denied, 482 _____ ______ U.S. 916 (1987). B. Admission of the Turret Tape ________________________________ At trial, the district court admitted the turret tape, a recording of the radio transmissions between Officer Twitchell and his dispatcher during his pursuit of Young. The district court initially declined to allow the tape, but warned defense counsel that questioning on cross examination of Officer Twitchell might render the tape admissible as a prior consistent statement under Rule 801(d)(1)(B) of the Federal Rules of Evidence. On appeal Young renews his hearsay objection to the tape.2   ____________________ 2. Young also asserts that the tape lacked proper foundation, and cannot be characterized as either Officer Twitchell's present sense impressions or excited utterances. See Fed. R. Evid. 803(1) and (2). With respect to ___ foundation, we note that Young failed to object to the tape on foundation grounds at trial. We will review, therefore, only for plain error, and conclude that the district court admitted the tape on a sufficient foundation. United ______ States v. Mitchell, 85 F.3d 800, 807 (1st Cir. 1996). Prior ______ ________ -13- 13 We review the district court's evidentiary rulings for abuse of discretion. See United States v. Alzanki, 54 ___ _____________ _______ F.3d 994, 1008 (1st Cir. 1995), cert. denied, 116 S. Ct. 909 _____ ______ (1996). Rule 801(d)(1)(B) provides in relevant part: (d) Statements which are not hearsay. A (d) Statements which are not hearsay. statement is not hearsay if-- (1) Prior statement by (1) Prior statement by witness. The declarant witness. testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive . . .  Fed. R. Evid. 801(d)(1)(B). For Rule 801(d)(1)(B) purposes, we view the lower court's determination that a statement rebuts an express or implied charge of recent fabrication as a finding of fact, subject to reversal only if it proves  ____________________ to playing the tape, the government elicited Officer Twitchell's testimony that he recognized the tape as a recording of the broadcast, he had listened to the tape, he recognized all of the voices on it, and that to the best of his knowledge, the tape fairly and accurately reflected the radio transmissions that occurred that evening. In the absence of any foundation-based objection by defense counsel, we cannot conclude that the district judge committed plain error. With respect to Young's alternative arguments, we conclude that the tape was properly admitted as a prior consistent statement, and, therefore, we decline to consider them.  -14- 14 clearly erroneous. United States v. Piva, 870 F.2d 753, 758 _____________ ____ (1st Cir. 1989). During direct examination of Officer Twitchell the government sought to introduce the turret tape. The district judge declined to allow the tape at that time, but indicated that cross examination of Officer Twitchell could render the tape admissible as a Rule 801(d)(1)(B) prior consistent statement. During cross examination, Young's counsel elicited testimony from Officer Twitchell that, prior to his recovery of the firearm, he had never broadcast (a) that he and Officer Fee saw a gun in Young's waistband, and (b) that he had seen Young throw the handgun during the pursuit. The government argued that through those questions defense counsel implied that Officer Twitchell fabricated seeing Young possess the gun, and moved on redirect to play the turret tape as a prior statement consistent with his testimony. Officer Twitchell testified that he saw Young throw the gun, and on the tape, states the same observation. The district court found that defense counsel, regardless of her intent, had elicited testimony from which the jury could infer that Officer Twitchell fabricated his testimony, and, accordingly, admitted the tape under Rule 801(d)(1)(B). We cannot conclude that the lower court abused its discretion. Despite defense counsel's insistence that she did not intend to imply fabrication, the district judge correctly -15- 15 ruled on the basis of the possible inferences the jury could make as a result of the question. See Piva, 870 F.2d at 759 ___ ____ (evaluating charge of fabrication on basis of what jury could infer). Moreover, the district judge did not commit clear error in finding that as a result of cross examination, a jury could have concluded that Officer Twitchell neither saw Young with a gun in his waistband, nor saw Young throw a gun. Defense counsel's questioning implied fabrication by highlighting that Officer Twitchell never broadcast that he saw a gun in Young's waistband, and that he never broadcast that he saw Young throw the gun until after Officer Twitchell recovered the gun. In simple terms, a jury could have inferred that if Officer Twitchell did not broadcast it, it did not happen. His statement on the tape was consistent with his testimony on direct examination that he had seen Young throw the gun, and, therefore, was appropriately admitted as a prior statement consistent with that testimony. Young points out that nothing in the turret tape directly contradicts the testimony elicited during cross examination, that Officer Twitchell did not broadcast that he saw Young throw a gun until after he recovered it. While we do not dispute the truth of Young's assertion, we do not ascribe similar significance to it. Nothing in the rule requires the prior consistent statement to contradict any testimony; the prior consistent statement must merely "be -16- 16 offered to rebut a charge or implied charge of fabrication." __________________ Fed. R. Evid. 801(d)(1)(B) (emphasis added). Having found, without clearly erring, that defense counsel's questioning could permit the jury to infer fabrication, the district judge did not abuse his discretion in admitting the turret tape as a Rule 801(d)(1)(B) prior consistent statement, offered to rebut that implied charge. The district judge allowed the government to play the entire turret tape, "in order to set the context, in order to understand the timing of what was going on." Young contends that even if one of Officer Twitchell's statements constitutes a prior consistent statement, the tape contains additional statements of Officer Twitchell and others that do not fall within that category, and, therefore, constitute inadmissible hearsay. At sidebar the district judge invited defense counsel to offer redactions for his consideration prior to playing the tape to the jury. Defense counsel failed to offer specific, cognizable redactions, failed on the record to object specifically to those portions of the tape she found objectionable, and to explain to the district judge why they did not constitute prior consistent statements. Accordingly, Young may not now raise this argument on appeal. See Piva, 870 F.2d at 759 (lack of specific objections at ___ ____ -17- 17 trial precludes party from raising specific issue on appeal).3 In any event, having reviewed the contents of the tape, we cannot conclude that the district judge abused his discretion in admitting the entire tape and playing it to the jury.4 C. Use of Transcripts of the Turret Tape _________________________________________ The district judge also allowed the government to provide a transcript to aid the jury in listening to the tape. By way of background, we digress to explain how the government prepared the transcript. The government first sent the tape to a transcribing company, which transcribed the tape to the best of its ability, given its unfamiliarity with police jargon, names and codes, and the events that transpired that particular evening. The government then allowed each participant to review the transcript independent  ____________________ 3. In Piva, the district judge admitted a prior statement ____ under Rule 801(d)(1)(B) over counsel's general hearsay objection. 870 F.2d at 759. Rather than point to a specific reason why Rule 801(d)(1)(B) did not apply, counsel merely made a hearsay objection and also argued improper rehabilitation. See id. We held that counsel's lack of ___ ___ specificity precluded raising a specific challenge to Rule 801(d)(1)(B) applicability for the first time on appeal. See ___ id.  ___ 4. With respect to the Turret tape, Young did not raise an argument based on Tome v. United States, 116 S. Ct. 696 ____ ______________ (1996) either at trial or now on appeal. We are not unmindful, however, of the Supreme Court's recent admonition that to be admissible, a prior consistent statement must have been made before the alleged motive to fabricate arose. Id. ___ at 700. In light of the nearly contemporaneous recovery of the gun and Officer Twitchell's broadcast, we are satisfied that this case does not present us with a Tome issue. ____ -18- 18 of one another, in order to attempt to fill in those portions the transcribing company could not determine. The government then sent the revised transcript back to the transcribing company, which then reviewed it while listening to the tape, in order to validate the corrections. The government informed the court of this procedure at the hearing on Young's motion to suppress, when it introduced the tape at trial, and before the jury by specifically eliciting Officer Twitchell's testimony that he assisted in the preparation of the final transcript. The district judge offered defense counsel the opportunity to replay the tape with an alternative transcript, and allowed significant time and latitude on cross examination of Officer Twitchell about the government's transcript and his role in its preparation. Defense counsel, however, failed to utilize any alternative transcript, or even the original draft of the transcript, to point out potential inaccuracies or inconsistencies, or simply to offer the jury an alternative view of the contents of the tape. In this circuit we have long approved the use of properly authenticated transcripts of tape recordings for the purpose of helping the jury listen to and understand the recordings themselves. See United States v. Campbell, 874 ___ _____________ ________ F.2d 838, 849 (1st Cir. 1989); United States v. Rengifo, 789 _____________ _______ F.2d 975, 980 (1st Cir. 1986) (citing cases). The district -19- 19 judge may even allow the jury to have the transcripts during deliberations provided "the court makes clear that the tapes, not the transcript constitute evidence in the case." Rengifo, 789 F.2d at 980 (quoting United States v. Richman, _______ ______________ _______ 600 F.2d 286, 295 (1st Cir. 1979)). Prior to trial, the district judge should attempt to obtain a single stipulated transcript; failing that, however, the court should allow each party to introduce its own transcript of the recording upon proper authentication. See id. at 983.  ___ ___ In addition, when "a defendant has possession of the transcript and tape prior to trial and raises no pretrial objection, the district court is not obliged to interrupt the trial to screen the transcript for accuracy prior to its use by the jury." United States v. Font-Ramirez, 944 F.2d 42, 48 _____________ ____________ (1st Cir. 1991), cert. denied, 502 U.S. 1065 (1992). _____ ______ Instead, the district court may simply listen to the tape as it is played for the jury, follow the transcript, and rule on specific objections as they arise. See id. Should a ___ ___ defendant fail to offer specific objections during playback of the tape, or offer an alternative transcript, the district court does not abuse its discretion by allowing the jury to use the transcript. See id. ___ ___ Our review of the record reveals no abuse of discretion in the use of the government's transcript in this case. At the outset we note that Young does not dispute -20- 20 proper authentication. Upon determining that the jury could hear the tape with the aid of the disputed transcript, the district judge gave the requisite instruction that the tape and not the transcripts constituted the evidence the jury should consider. The judge specifically instructed the jury to disregard anything in the transcript that they could not understand from the tape. See Campbell, 874 F.2d at 849 ___ ________ (once judge instructs jury that tape and not transcript is evidence, we review for abuse of discretion). The judge also instructed the jury that he would allow defense counsel to play the tape again with a different transcript, "to see if you hear something different from what you might have thought you heard when it was played with the other transcript before you." The judge reiterated this instruction as part of his final instructions while charging the jury.5  In addition to the events at trial, the record reflects that defense counsel possessed copies of the government's transcripts before trial, but raised no pretrial  ____________________ 5. Young also asserts that by reviewing the transcript and helping to fill in some of the portions the transcribing company found unintelligible, Officer Twitchell had the opportunity to create his own prior consistent statements after a motive to fabricate arose. See Tome v. United ___ ____ ______ States, 115 S. Ct. 696, 700 (1995) (holding that prior ______ consistent statement must have been made before motive to fabricate arose in order to be admissible). We note only that, as the district judge twice instructed the jury, the evidence consisted of the tape and not the transcript. As indicated, defense counsel had ample opportunity to present an alternative transcript, or to impeach the transcript through cross examination of Officer Twitchell.  -21- 21 objections specific to either of them. While defense counsel objected to the revised transcript at trial on the basis of alleged inaccuracies, she neither made specific objections during playback of the tape, nor chose to offer an alternative transcript, even though the district judge clearly indicated he would permit her to do so. On that basis we cannot conclude that the district court abused its discretion in allowing the jury to use the government's transcript.6 See Font-Ramirez, 944 F.2d at 48 (holding that ___ ____________ district court does not abuse discretion by allowing transcript in absence of specific objections or alternative transcript).  Finally, Young argues that the tape and transcript had a prejudicial effect that far outweighed their probative value under Rule 403 of the Federal Rules of Evidence. Young failed to raise this objection at trial; we review the  ____________________ 6. Young also challenges the admissibility of the tape and use of the transcript on the basis of the Confrontation Clause of the Sixth Amendment. See U.S. Const. amend. VI, ___ cl. 3. Young argues that the transcript contains statements by the dispatcher, who did not appear at trial as a witness. The Confrontation Clause exists to "advance a practical concern for the accuracy of 'the truth-determining process . . . by assuring that the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.'" United States v. Panzardi-Lespier, 918 F.2d 313, 319 (1st ______________ ________________ Cir. 1990). On that basis, we have held that when an out-of- court statement "falls within a firmly rooted exception to the hearsay principle," its admission does not violate the Confrontation Clause. See id. Having determined that the ___ ___ turret tape constitutes a prior consistent statement, and not hearsay, we are satisfied that its admission did not violate the Confrontation Clause.  -22- 22 district court's decision, therefore, only for plain error. See Jacques v. Clean-Up Group, Inc., 96 F.3d 506, 516 (1st ___ _______ _____________________ Cir. 1996). We will disturb a district court's Rule 403 rulings, moreover, only in "'extraordinarily compelling circumstances.'" United States v. Kayne, 90 F.3d 7, 12 (1st _____________ _____ Cir. 1996), cert. denied, __ S. Ct. __, 1997 WL 2646 (Jan. 6, _____ ______ 1997) (quoting United States v. Montas, 41 F.3d 775, 783 (1st _____________ ______ Cir. 1994), cert. denied, 115 S. Ct. 1986 (1995)). We see no _____ ______ such circumstances in this instance, and identify no plain error in admission of the tape and use of the transcript. Young's Rule 403 argument, raised for the first time on appeal, thus fails. Affirmed. Affirmed ________ -23- 23