<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

      [NOT FOR PUBLICATION--NOT TO BE CITED AS PRECEDENT]

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 96-2065

                         UNITED STATES,

                           Appellee,

                               v.

                         JOSE FIGUEROA,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF RHODE ISLAND

     [Hon. Raymond J. Pettine, Senior U.S. District Judge]

                      ____________________

                             Before

                     Boudin, Circuit Judge,

Wellford, Senior Circuit Judge,

                   and Lynch, Circuit Judge.  

                     _____________________

    William J. Murphy, by appointment of the Court, for appellant.
    Richard W. Rose, Assistant United States Attorney, with whom
Sheldon Whitehouse, United States Attorney, was on brief, for
appellee.

                      ____________________

                      September 22, 1998
                     ____________________

         Per Curiam.  Defendant, Jos Figueroa, was charged with
possession with intent to distribute cocaine in violation of 21
U.S.C.  841(a)(1), and carrying a firearm during and in relation
to a drug trafficking crime in violation of 18 U.S.C.  
924(c)(1).  Prior to trial, Figueroa moved to suppress evidence
that was found after a warrantless search and seizure of a
closed, opaque box that Figueroa was allegedly carrying during
his flight from police officers.  Figueroa claimed that the
search of the box, which produced a handgun and crack cocaine,
constituted a violation of his Fourth Amendment protection
against unreasonable searches and seizures.  On May 30, 1996,
after an evidentiary hearing, the district court denied
Figueroa's motion to suppress.  Figueroa's trial commenced at the
conclusion of the suppression hearing, and on June 3, 1996, the
jury found him guilty on both counts in the indictment.  Figueroa
now appeals the district court's denial of his motion to
suppress.  For the following reasons, we affirm.
         On January 22, 1996, Detective Robert Lepre of the Providence
Police Department obtained a search warrant for Figueroa's
premises on the first floor at 40 Whittier Avenue in Providence.  
Although 40 Whittier Avenue is a three-floor tenement with an
apartment on each floor, the search warrant was for the first-
floor apartment only.  At approximately 6:30 p.m., Detective
Lepre, with eight or nine other members of the Providence Special
Investigations Bureau, approached the building to execute the
search warrant.  As the raid team approached the building, the
detectives saw Figueroa looking out the front window and saw him
flee from the window.  Detective Colanduono and Detective Harris
went to cover the rear of the building.  By the time they arrived
at the rear door of the house, they heard Figueroa running from
the first to the second floor.  They observed that the rear
exterior door was "wide open," and they ran up the stairs after
Figueroa.  Seeing the second-floor apartment door partly open,
the men entered and saw Figueroa emerging from "the baby's room"
wearing shorts, a tee shirt, and socks, standing in an open
doorway breathing very heavily.  Recognizing that Figueroa
matched the description of the target of the raid, who was
described as having orange hair, they escorted the defendant out
of the apartment.
         The residents of the second-floor apartment, Rosa Peguero and
Adley Francois, testified that they heard the loud banging of a
forced entry, and then heard somebody coming up the stairs of the
apartment building.  Francois opened the door, and Figueroa came
in, carrying a "small white box" with a "pinkish or reddish"
cover.  Figueroa then went into their baby's room, and the police
came after him a few seconds later.  Francois indicated to the
detectives that Figueroa had just run into the apartment, and
that Figueroa was the person who lived on the first floor.  
Detective Harris asked Francois whether Figueroa had carried
anything into the apartment, and Francois pointed to a baby wipes
box on a changing table in the baby's bedroom.
         After obtaining Francois' consent to search the baby's room,
Harris opened the box to which Francois had pointed, but it
contained only baby wipes.  Harris asked Francois, "Are you sure
it was like this box?"  Francois replied that the box Figueroa
had carried was like the baby wipes box, and he suggested that
Figueroa may have thrown it out the window.  Harris, having found
the window locked and secured, briefly continued searching the
bedroom, and then exited the room to bring Figueroa downstairs to
Detective Lepre.
         Detective Colanduono continued the search of the baby's room, and
found another baby wipes container.  He asked Francois if the box
was his, and Francois replied, "No, I think that's what
[Figueroa] brought into the room."  Colanduono kicked it and then
bent down and opened it, and observed that it contained a
handgun, a magazine with three live rounds in the magazine, and
packages of crack cocaine.  The cocaine found in the baby wipes
box was in the same type of packaging as the cocaine found on the
first floor.  The baby wipes box and its contents were seized.
         A federal grand jury in the District of Rhode Island returned a
two-count indictment charging Figueroa with possession with
intent to distribute cocaine, in violation of 21 U.S.C.
841(a)(1), and carrying a firearm during and in relation to a
drug trafficking crime, in violation of 18 U.S.C.  924(c)(1).  
Prior to trial, Figueroa moved to suppress the contents of the
baby wipes box, claiming that the search of the closed, opaque
box violated his Fourth Amendment right to be free from
unreasonable searches and seizures.  On May 30, 1996, after an
evidentiary hearing, the district court denied Figueroa's motion
to suppress.  The court reasoned that Figueroa had a privacy
interest in the box, but that the exigency of the circumstances
justified the officer's search.  Though Figueroa had been
detained by the officers, the court found that "[i]t is
reasonable and logical to conclude that [Peguero and Francois]
might well have destroyed the evidence."  The trial commenced at
the conclusion of the suppression hearing, and on June 3, 1996, a
jury found Figueroa guilty on both counts.  On September 6, 1996,
the court sentenced Figueroa to 123 months imprisonment.  
Figueroa now appeals, claiming that the district court erred in
denying his motion to suppress.
         Pursuant to Ornelas v. United States, 517 U.S. 690 (1996), the
standard of review is de novo for determinations of probable
cause, clear error for findings of fact, and "due weight" to
inferences judges and police officers may draw from the facts.  
Id. at 699.  In United States v. Young, 105 F.3d 1 (1st Cir.
1997), we employed this "dual standard" in reviewing a motion to
suppress:
           We review the district court's findings of fact for clear error.
           . . .  Deference to the district court's findings of fact
           reflects our awareness that the trial judge, who hears the
           testimony, observes the witness' demeanor and evaluates the facts
           first hand, sits in the best position to determine what actually
           happened.  By contrast, we review conclusions of law de novo and
           subject the trial court's constitutional conclusions to plenary
           review.  Determinations of probable cause and reasonable
           suspicion, relevant to the constitutionality of law enforcement
           seizures and arrests under the Fourth Amendment, present mixed
           questions of law and fact which we review de novo.

Id. at 5 (citations omitted).  "[W]e can affirm the admission of
evidence on any proper basis, even if the trial judge relied on a
different ground."  LaBarre v. Shepard, 84 F.3d 496, 500-01 (1st
Cir. 1996) (citing United States v. Nivica, 887 F.2d 1110, 1127
(1st Cir. 1989)).
         In this appeal, Figueroa argues that, while the seizure of the
box may have been constitutional under the "exigent
circumstances" exception, the opening of the box was certainly
unconstitutional.  Figueroa cites several cases for the
proposition that the exigent circumstances that may justify the
seizure of a closed package do not justify the opening of the
closed package which may have been properly seized.  See United
States v. Jacobsen, 466 U.S. 109, 114 (1984) ("Even when
government agents may lawfully seize . . . a package to prevent
loss or destruction of suspected contraband, the Fourth Amendment
requires that they obtain a warrant before examining the contents
of such a package."); United States v. Doe, 61 F.3d 107, 111 (1st
Cir. 1995) ("Although probable cause, as well as exigent
circumstances, may support the warrantless seizure of an enclosed
opaque container, . . . the same probable-cause showing is not
necessarily sufficient to justify its subsequent warrantless
search."); United States v. Garay, 477 F.2d 1306, 1308 (5th Cir.
1973) ("While the exigencies of the situation may well have
justified the warrantless detention of [the defendants], they
cannot validate the search of the suitcases made at the time when
[the defendants] were under restraint . . . .  At that point,
[the defendants] were incapable of concealing or destroying the
suitcases or their contents.").  The government argues that the
police officers were justified in searching the closed container
for at least four reasons.  First, the government argues that the
police officers were justified by the continued exigent
circumstances.  Second, the government claims that the box
previously held by Figueroa was abandoned in the second-floor
apartment, and he therefore had no standing to challenge the
search.  Third, the government argues that the search and seizure
of the box was incident to Figueroa's arrest.  The government's
final argument is that the box was still covered by the search
warrant for the first floor from which the box had just been
taken.
         In our view, the wisdom of the district court's reliance on the
"exigent circumstances" exception to the warrant requirement is
somewhat debatable, given the fact that Figueroa had been
detained, and the exigency of the situation arguably had ceased,
prior to the opening of the box.  Indeed, counsel for the
government stated that its argument based on the "exigency of the
circumstances" was probably its weakest.  We do not, however,
base our opinion on the propriety of the district court's
conclusion in that regard.  Rather, after a careful review of the
record, we find that this case falls squarely into the
"abandonment" line of cases.
         It is well settled that if a defendant abandons property while he
is being pursued by police officers, he forfeits any reasonable
expectation of privacy he may have had in that property.  SeeAbel v. United States, 362 U.S. 217, 241 (1960) (holding that it
is lawful for the government to seize property that has been
abandoned by the defendant); United States v. Lewis, 40 F.3d
1325, 1334 (1st Cir. 1994) (finding that defendant had
"abandoned" a rock of cocaine that was tossed from his person
during pursuit, and that the seizure of such property was
lawful); United States v. Wilson, 36 F.3d 205, 209 (1st Cir.
1994) (holding that "because defendant could have had no
reasonable expectation of privacy in the packet dropped and left
behind in a public street, [the] inspection of it was not a
search"); United States v. Sealey, 30 F.3d 7, 10 (1st Cir. 1994)
(reasoning that dropping the contraband during pursuit of the
defendant constituted abandonment of that contraband).  "[T]he
act of abandonment extinguishe[s] [a defendant's] Fourth
Amendment claim."  Sealey, 30 F.3d at 10.  Determining whether
certain property has been "abandoned" involves an objective test
"under which intent may be inferred from words spoken, acts done,
and other objective facts."  United States v. Wider, 951 F.2d
1283, 1285 (D.C. Cir. 1991) (internal quotation marks omitted).
    In this case, the evidence showed that Figueroa saw the police
approaching his apartment, and that he tried to flee from the
scene, carrying with him the box in question.  During the
officers' pursuit, he attempted to stash the box in his
neighbors' apartment.  There is no evidence to suggest that he
intended to retrieve the box at a later time, or that he obtained
the owners' permission to leave the box with them for
safekeeping.  Therefore, when Figueroa left the box in that
apartment, he abandoned it and all expectations of privacy
therein.
    Figueroa argues that the facts of this case are distinguishable
from those in the "abandonment" line of cases cited above,
because he discarded his box in a private residence rather than
in a public place.  Therefore, he should not be deemed to have
forfeited his privacy interest in the box.  Furthermore, he
argues, he should not be deemed to have "abandoned" the box,
because the objective evidence shows that he intended to retrieve
the box at a later time, perhaps when the officers had completed
their business at the apartment.  According to Figueroa, this
case is more akin to the situation in a recent case decided by
the Ninth Circuit Court of Appeals, United States v. Fultz, No.
97-30337, 1998 WL 334146 (9th Cir. June 24, 1998).   
    In Fultz, the defendant lived "on and off" with his friend,
Tiffany Kassedyne, and he stored many of his belongings in closed
boxes in Kassedyne's garage.  Law officers went to Kassedyne's
house to investigate a store burglary, and Kassedyne gave them
written permission to search the premises.  She directed the
officers to the specific area in the garage where the defendant
stored his belongings.  Without Kassedyne's specific consent to
search Fultz's belongings, the officers opened the boxes and
found the contraband involved in the case.  In a split decision,
the Ninth Circuit found that the search of the boxes violated the
Fourth Amendment.  Id. at *3.  Initially, the court determined
that Fultz had a reasonable expectation of privacy in his
belongings, even though those belongings were kept in a place
that was not exclusively controlled by him.  Id. at *2.  The
court then found that Kassedyne had no actual or apparent
authority to consent to the search of the defendant's belongings.  
Id. at *2-*3.  Among other things, the court cited to Justice
O'Connor's concurring opinion in United States v. Karo, 468 U.S.
705 (1984), for the proposition that a homeowner lacks the power
to give consent to search the closed container of a guest in that
home.
    The reasoning in Fultz does not persuade, because those facts are
clearly distinguishable from those of the instant case.  Figueroa
was not a "guest" of his neighbors at the time he entered the
apartment to flee from the officers.  Furthermore, there was no
evidence that Figueroa had previously obtained the permission of
his neighbors to keep the box in their apartment, nor was there
evidence that he intended to retrieve the box at a later time.  
We are mindful that the instant case is slightly different from
the "abandonment" cases cited above, in that the contraband here
was discarded in a private residence rather than in a public
place.  That distinction, however, makes no difference under
these circumstances.  Figueroa simply stashed the box in the
nearest available place in hopes that it would not be discovered
by the officers who were in pursuit of him.  The legal result
would be the same if Figueroa had put the box in the stairwell
during the chase.  When he left the box in the second-floor
apartment, a place in which he concededly had no expectations of
privacy, Figueroa relinquished any expectation of privacy he may
have otherwise had in the box.  See United States v. Morgan, 936
F.2d 1561, 1570-71 (10th Cir. 1991) (holding that defendant had
"abandoned [a] gym bag and any privacy interests he had in it"
when he tossed it into an acquaintance's yard while fleeing
police, since the item was not "left to the care or
responsibility of another" and since there was no "delayed
indication of an intent to retain an expectation of privacy in
the item"); United States v. Hershenow, 680 F.2d 847, 855-56 (1st
Cir. 1982) (holding that a defendant who left a container in the
barn of a nursing home where he was employed lost his reasonable
expectation of privacy in the container because, inter alia, he
"did not have regular access to the barn . . . and, most
important, . . . had no right of control over the locus of the
box").
    Under these circumstances, we conclude that Figueroa's Fourth
Amendment rights were not violated by the search of the box in
question based on the fact that he "abandoned" the box during the
officer's pursuit.  Accordingly, we AFFIRM the decision of the
district court.

                                            Concurrence Follows

    WELLFORD, Senior Circuit Judge (Concurring).  I agree with the
reasoning set forth in the main opinion in this case.  I write
 separately, however, to add that I would have also upheld the
  district court's decision to admit the evidence found in the
 opaque box because, in my view, the box and its contents were
 covered by the valid search warrant issued in this case.  The
  search warrant covered the entire first floor at 40 Whittier
Avenue.  I would hold that the box, though it was taken out of
the apartment immediately after the police arrived, should have
been deemed to have been within the scope of the search warrant
                                    under these circumstances.  

</body>

</html>