**UNITED STATES of America,**

v.

**Hector RIVERA, Defendant.**

**No. 00–CR–10288–PBS.**

United States District Court, D. Massachusetts.

July 9, 2001.

---

William F. Sinnott, United States Attorney's Office, Boston, MA, for United States.

John W. Laymon, Boston, MA, for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS

SARIS, District Judge.

The Defendant has moved to suppress evidence of a firearm and certain statements made by another individual present at the time of arrest. For the reasons stated below, the motion to suppress is *DENIED.*

### I. Background

On August 10, 2000, the Defendant Hector Rivera ("Rivera") was indicted by a federal grand jury on one charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Defendant moved this Court to suppress evidence of the firearm, a 9 millimeter pistol, recovered from an automobile occupied by the Defendant and to suppress statements made to law enforcement officials by another individual present at the time of Rivera's arrest.

A hearing was held on February 12, 2001, at which both sides examined witnesses and presented arguments. At the close of the hearing, the Court ruled from the bench denying Defendant's motion to suppress. After a jury trial, Defendant was convicted. The basis for the denial of Defendant's motion is set forth in the factual findings and legal analysis of this opinion.

### II. Factual Findings

At 9:30 p.m. on April 27, 2000, Massachusetts State Troopers Mario Millett and Effron Montanez, members of the North Shore Gang Unit, were patrolling a high-crime area in the Erving Street area of Lawrence, Massachusetts in plain clothes and an unmarked police vehicle. They were in the immediate vicinity of a club which was a normal hang out for gang members. As they passed Myrtle Court in Lawrence, the officers noticed a car, a green Ford Taurus, parked illegally in the middle of the street. They also noticed two Hispanic men, one of whom, Jose Acosta, was urinating as he stood near the driver's side door of the car. The second man, Rivera, was leaning against the passenger side of the vehicle. The passenger door was open. The officers decided to back up their vehicle and proceed onto Myrtle Court to investigate.

As the officers approached, they activated the blue and white police lights on their vehicle. The officers pulled within a car's length behind the Taurus and exited their vehicle. As they exited, Officer Millett noticed Rivera make a movement toward his waistband with his right hand, turn his back to the police officer, duck into the car, sit inside the passenger's side of the Taurus, and lean over toward the operator's side of the car out of the trooper's view. Approaching Rivera and Acosta on foot, the officers announced themselves as State Police and immediately became aware of the distinct odor of marijuana emanating from the vehicle. Rivera exited the Taurus when Officer Millett was a few steps away and threw what Officer Millett perceived to be a glowing marijuana cigar, or "blunt," to the ground.

Officer Millett approached Rivera and asked him if he had just discarded a blunt. Recognizing Rivera but unable to identify him, Millett asked if they knew each other. At that point, Rivera pushed Officer Millett back and attempted to flee. Officer Millett caught up with Rivera within a few steps, brought him to the ground, handcuffed him, and placed him under arrest. He asked Rivera why he would push him back and try to flee just because of a marijuana blunt.

Officer Millett called for backup and two additional officers arrived on the scene. Once Rivera was cuffed and seated on a nearby curb, Officer Millett approached the open door on the driver's side of the Taurus. The interior of the car smelled strongly of marijuana. With his flashlight, Officer Millett peered inside the car and noticed a bulge underneath the driver's side floor mat, just below the gas pedal. Beneath the mat Officer Millett discovered a 9 millimeter pistol. In a loud voice, he proclaimed he had found a gun. The driver of the car, Jose Acosta (who had been urinating) exclaimed immediately, "It's not my gun, it's not mine." An open container of alcohol was found wedged between the seat and console. As Officer Millett was conducting the search of the Taurus, Officer Montanez retrieved the blunt that had been tossed aside earlier by Rivera. Acosta was also placed under arrest as he had no license. Acosta admitted that they had been smoking marijuana.

### III. Legal Analysis

#### A. Exclusion of firearm

Rivera contends that the firearm must be suppressed because the police were not justified in initially approaching Rivera and Acosta in the street. In addition, Rivera contends that, even if the initial stop was warranted, the subsequent search of the vehicle that yielded the firearm violated the Fourth Amendment.

#### 1. Validity of the initial stop

According to Rivera, the officers' initial decision to approach Acosta and Rivera was impermissible for two reasons. First, he claims that the officers lacked the requisite level of suspicion to justify the initial approach. Second, he claims that, even if there were objectively suspicious circumstances justifying a brief stop, the officers only stopped him because both he and Acosta are Hispanic.

▮ Generally speaking, police interactions with civilians fall within three categories of analysis under the Fourth Amendment. Under the first category, "[p]olice may approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment." *See United States v. Young*, 105 F.3d 1, 6 (1st Cir.1997). Under such circumstances, the police are not required to have any articulable suspicion to initiate questioning so long as, based on the totality of the circumstances, the person being questioned would have felt free to terminate the conversation and proceed along his way. *See id.; Florida v. Bostick*, 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

▮ A officer may also effect a brief, limited investigative stop where the officer has a reasonable suspicion, based on articulable facts, that criminal activity may be afoot. *See Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). To determine if such a *Terry* stop was warranted, the First Circuit follows a two-pronged inquiry. First, the court must determine whether the officer's action was justified at its inception; and second, it must determine whether the action was reasonably related in scope to the circumstances which justified the interference in

the first place. *See United States v. Moore*, 235 F.3d 700, 703 (1st Cir.2000).

■■■ Finally, an officer may effect an arrest, which occurs when the officer, "acting on probable cause that an individual has committed a crime, detains that individual as a suspect." *Young*, 105 F.3d at 6. Probable cause exists "when police officers, relying on reasonably trustworthy facts and circumstances, have information upon which a reasonably prudent person would believe the suspect had committed or was committing a crime." *Id.*

■■■ With this rubric as guide, I first turn to Rivera's argument that the officers were not justified in initially approaching Rivera and Acosta. Rivera argues that, at the time the officers initially observed him that evening, he was not committing any crime. However, consistent with the first category of Fourth Amendment analysis, the officers required no particularized level of suspicion merely to approach the duo and ask questions. *See id.* In addition, as Officers Millett and Montanez passed Rivera and Acosta on Myrtle Court, two infractions were readily apparent: the illegally parked car and Acosta's indecent exposure. Although both officers admit that Rivera appeared from a distance to be doing nothing illegal, this did not require them to refrain from investigating the illegally parked vehicle and indecent exposure.

■■■ Moreover, once the officers approached the Taurus, Rivera's behavior under the circumstances gave the officers sufficient cause to investigate further. Rivera first made a suspicious movement by reaching for his waistband and retreating to the interior of the car. In addition, the scene smelled of burning marijuana, and Rivera discarded what appeared to be a blunt as Officer Millett looked on. Based on the totality of these facts, Officer

Millett had more than a reasonable suspicion that criminal activity was afoot. *See, e.g., United States v. Velez–Saldana*, 252 F.3d 49, 53 (1st Cir.2001) (holding that failure to give one's name after being asked by the police could be viewed as a suspicious circumstance even if there was no outright refusal); *Illinois v. Wardlow*, 528 U.S. 119, 124–25, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (holding that sudden and unprovoked flight in a high crime area creates a reasonable suspicion justifying a *Terry* stop). He was therefore justified in approaching, questioning, and stopping Rivera.

As to the second issue, Defendant claims that the questioning was unlawful because it was a pretextual excuse to investigate Acosta and Rivera because they are Hispanic. I find that the police officers were not motivated by Defendant's race or ethnicity when they approached Acosta and Rivera. Rather, they were motivated to investigate by the suspicious activity they observed in a high crime area frequented by gangs. Moreover, the Supreme Court decision in *Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), is dispositive here. *Whren* holds that an officer's subjective motivation does not invalidate objectively justifiable police conduct under the Fourth Amendment. *See id.* at 809, 116 S.Ct. 1769. There is no evidence here of selective prosecution or racial profiling. *But cf. Yick Wo v. Hopkins*, 118 U.S. 356, 373–73, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (holding that racially disparate enforcement of a city's criminal ordinance violates the Equal Protection clause).

■■■ Finally, the propriety of the arrest of Rivera is beyond question as it was supported by probable cause as soon as Rivera assaulted the police officer.

## 2. Legality of automobile search

█ In order for the warrantless search of the Taurus to be lawful, it must fall within a recognized exception to the Fourth Amendment's requirement of obtaining a warrant prior to a search. *See Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978) ("searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.") (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (footnotes omitted)). In this case, the government argues that the applicable exception is the so-called "automobile exception." *See United States v. Staula*, 80 F.3d 596, 603 n. 4 (1st Cir.), *cert. denied*, 519 U.S. 857, 117 S.Ct. 156, 136 L.Ed.2d 101 (1996). Under that exception, a "police officer may effect a warrantless search of the interior of a motor vehicle on a public thoroughfare as long as he has probable cause to believe that the vehicle contains contraband or other evidence of criminal activity." *Id.* at 602.

█ Here, the automobile exception provides ample justification for the search of the Taurus. "[W]hen a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area." *Id.* (citing *United States v. Johns*, 469 U.S. 478, 482, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir.1995); *United States v. French*, 974 F.2d 687, 692 (6th Cir.1992), *cert. denied*, 506 U.S. 1066, 113 S.Ct. 1012, 122 L.Ed.2d 160 & 507 U.S. 978, 113 S.Ct. 1431, 122 L.Ed.2d 798 (1993)). "Since the aroma of marijuana wafted from the passenger area [of the car], that region became fair game for a drug search under the automobile exception to the warrant requirement." *Id.* 80 F.3d at 603 n. 4. It is inconsequential that the lawful search yielded a gun, rather than drugs.[1] *See*,

---

1. Arguably, the search was also justified under the "bright line" rule of *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which held that an officer may permissibly search a vehicle as a contemporaneous incident of the occupant's arrest. *See id.* at 460, 101 S.Ct. 2860. The courts of appeals are split as to whether a suspect is considered an "occupant" of a vehicle when police arrest the suspect shortly after he leaves the vehicle. *Compare U.S. v. Hudgins*, 52 F.3d 115, 120 (6th Cir.) (search of vehicle valid as incident to arrest when officers initiated contact while defendant still in vehicle by turning on their blue lights, pulled defendant over to side of road, asked defendant to step out of vehicle, and subsequently arrested defendant outside vehicle), *cert. denied*, 516 U.S. 891, 116 S.Ct. 237, 133 L.Ed.2d 165 (1995); *United States v. Willis*, 37 F.3d 313, 317 (7th Cir.1994) (search of vehicle valid as incident to arrest when officer saw defendant sitting inside vehicle and then squatting at rear of vehicle, and defendant subsequently arrested in area immediately next to vehicle); *United States v. Riedesel*, 987 F.2d 1383, 1388–89 (8th Cir.1993) (search of vehicle valid as incident to arrest when police earlier observed defendant in vehicle, and later arrested him outside vehicle at gas station) and *United States v. Franco*, 981 F.2d 470, 472 (10th Cir.1992) (search of vehicle valid as incident to arrest when police officers arrested defendant in government truck during course of drug deal and defendant's car in close proximity) with *United States v. Strahan*, 984 F.2d 155, 159 (6th Cir.1993) (search of vehicle not incident to arrest where defendant was arrested thirty feet from the vehicle); and *United States v. Fafowora*, 865 F.2d 360, 362 (D.C.Cir.) (search of automobile not incident to arrest when suspects arrested while walking one car length away from car), *cert. denied*, 493 U.S. 829, 110 S.Ct. 98, 107 L.Ed.2d 62 (1989). Recently, the Supreme Court endeavored to resolve the split of authority by

*e.g., United States v. Taylor,* 162 F.3d 12, 20 (1st Cir.1998) (refusing to suppress gun found during search of automobile based on the smell of burning marijuana).

**B. Exclusion of statements by Acosta**

 Rivera also contends that certain incriminating statements were elicited from Acosta by Officer Montanez in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and must therefore be suppressed for purposes of Rivera's trial. According to the government, the statement at issue involved an admission by Acosta to Trooper Montanez before he was given his *Miranda* rights that they had been smoking marijuana. Whether Acosta's statements were the product of a custodial interrogation in which the Officer neglected to give Acosta the proper *Miranda* warning is of no moment in these proceedings because Rivera lacks standing to raise the issue. *See United States v. Lopez,* 709 F.2d 742, 745 n. 3 (1st Cir.), *cert. denied,* 464 U.S. 861, 104 S.Ct. 187, 78 L.Ed.2d 166 (1983); *United States v. Salinas–Calderon,* 728 F.2d 1298, 1302 (10th Cir.1984); *United States v. Penn,* 647 F.2d 876, 884 (9th Cir.) (en banc), *cert. denied,* 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980); *United States v. Fredericks,* 586 F.2d 470, 479–81 (5th Cir.1978), *cert. denied,* 440 U.S. 962, 99 S.Ct. 1507, 59 L.Ed.2d 776 (1979). *Cf. Alderman v. United States,* 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) ("We adhere to ... the general rule that Fourth Amendment rights are personal rights which, like some other constitutional

rights, may not be vicariously asserted."). In any event, the government took the position at the hearing that it would not seek to introduce the statement at trial.

**IV. CONCLUSION AND ORDER**

For the reasons stated above, the Defendant's Motion to Suppress (Docket No.19) is *DENIED* in its entirety.