UNITED STATES of America, Plaintiff,

v.

Juan SANTIAGO VEGA, Defendant.

Crim. No. 02–071 (DRD).

United States District Court, D. Puerto Rico.

Oct. 10, 2002.

**4**

Rafael F. Castro–Lang, San Juan, PR, for defendant.

## OPINION AND ORDER

DOMINGUEZ, District Judge.

Pending before the Court is defendants' Juan Santiago–Vega ("Santiago–Vega" or "Defendant"), motion to suppress evidence, filed on April 22, 2002. (Docket No.26). On April 24, 2002, the Court held a Pretrial Conference, where this matter was referred to Magistrate Gustavo Gelpi, for Report and Recommendation (R & R). (Docket No. 30). The Government filed opposition to the motion to suppress, on May 14, 2002. (Docket No. 32). A hearing on suppression was held before Magistrate Gelpi, on June 3, 2002,(Docket No. 35). Magistrate Gustavo Gelpi issued his R & R, on June 18, 2002, recommending denial of Santiago–Vega' motion to suppress, and granting the defendant ten-days (10) days to file objections thereto. (Docket No. 37).

On June 24, 2002, the Court granted Defendant ten (10) days following receipt of the transcripts from the suppression hearing to oppose the R & R. (Docket No. 40). Santiago–Vega filed his objections to the R & R, on July 22, 2002. (Docket No. 44). The Government filed its opposition to the Defendant's objections to the R & R, on August 5, 2002. (Docket No. 45). On August 15, 2002, the Defendant filed a motion to provide "supplemental citation authority," advising the Court of a local case, from the Supreme Court of Puerto Rico, which allegedly stands for the proposition that a search is illegal (in Puerto Rico, of course), if it is based only on the fact that a person had a bulge in his body. (Docket No. 49). On August 29, 2002, the Government responded to this motion. (Docket No. 52). The Defendant replied thereto, soon thereafter on September 10, 2002. (Docket No. 53). Notwithstanding, for the reasons stated below, defendants' motion is hereby **DENIED.** (Docket No. 26).

### I

On February 7, 2002, at approximately 10:15 p.m., deputy U.S. Marshall, Roberto Vizcarrondo, was at a Gulf gas station located in Road No. 167, intersection with Sabana Seca Avenue, in Levittown, Toa Baja. While he was gassing his vehicle there, he observed Mr. Juan Santiago–Vega, the defendant, arriving in a black Mercedes Benz (SUV) which parked across from him on the other side of the gas pump. Then he observed the defendant lean back and put something into the right side of his waist band. After that, the defendant stepped out of the SUV, walked in front of Vizcarrondo's car, and the officer saw a bulge on the right side of defendant's shirt, which Vizcarrondo, do to his training and experience, believed to be a concealed firearm. Due to his experience in that high crime area, he believed that the firearm was going to be used to commit a crime at the gas station. He immediately called the FBI switchboard, and requested the operator to run an investigation on the license plate of the defendant's vehicle and he also called the Police of Puerto Rico Headquarters. Vizcarrondo established communication, and told them that he was a federal agent, that he was by himself at a gas station, and that he had observed what appeared to be an armed individual walking into a gas station which appeared to have intentions of assaulting the place with a weapon.

Minutes after, Deputy Marshall Vizcarrondo exited the gas station, drove over on 167 Road North, made a "u" turn up at the next traffic light and positioned himself across from the gas station, on the other side of Road No. 167. From that position, he could observed the defendant and the SUV moved. When police officers from the Levittown precinct got there minutes later, they decided to follow defendant's SUV and intervene. Defendant was stopped by two police cars which had been dispatched, following agent Vizcarrondo's call to the local authorities. Police agents, Alexander Quiles, and Rafael Figueroa were in their patrol cars and ordered the defendant to stop. They activated their siren twice when the defendant refused to stop on the first siren notice. Then, the defendant came to a full stop at a place called Davinson Plaza, near the gas station.

Immediately, agent Figueroa began asking the defendant questions while Agent Quiles was standing next to them. The SUV door was left open and therefore, agent Quiles was able to see inside the SUV, which had its interior light lit. Agent Quiles detected, in between the front seats, a plastic bag containing what appeared to be white powder. The agent proceeded to reach for the plastic bag and, at that moment, he was also able to see a weapon lying on the floor of the passenger side of the vehicle. After examining the contents of the plastic bag and the gun, both agent Figueroa and agent Quiles put Mr. Santiago Vega under arrest.

On April 22, 2002, the defendant filed a motion to suppress evidence, arguing that an invalid "Terry Stop" occurred (Docket No. 26). On June 18, 2002, Magistrate Gelpi issued a Report, recommending that defendant's motion to suppress (Docket No. 37) be denied. On July 22, 2002, defendant filled objections to R & R, and

requesting that the suppression of the firearm, magazines, bullets, and drugs found in this case be granted (Docket No. 44).

**II**

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED. R.CIV.P. 72(b); Rule 503, Local Rules, District of Puerto Rico. See *Mathews v. Weber*, 423 U.S. 261, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976). Of course, an adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof. See Local Rule 510.2(A); FED.R.CIV.P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), in pertinent part, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

See 28 U.S.C. § 636(b)(1).

However, pursuant to FED.R.CIV.P. 72(b), "[a]bsent objection by the plaintiffs, the district court had a right to assume that plaintiffs agreed to the magistrate's recommendation." *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir. 1985), *cert. denied*, 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 556 (1985). Moreover, "[f]ailure to raise objections to the Report and Recommendation waives that party's right to review in the district court and those claims not preserved by such objection are precluded on appeal." *Davet v.*

*Maccarone,* 973 F.2d 22, 30–31 (1st Cir. 1992). *See also Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994) (holding that objections are required when challenging findings actually set out in magistrate's recommendation, as well as magistrate's failure to make additional findings); *Lewry v. Town of Standish,* 984 F.2d 25, 27 (1st Cir.1993) (stating that "[o]bjection to a magistrate's report preserves only those objections that are specified"); *Keating v. Secretary of H.H.S.,* 848 F.2d 271, 275 (1st Cir.1988); *Borden v. Secretary of H.H.S.,* 836 F.2d 4, 6 (1st Cir.1987) (holding that appellant was entitled to a de novo review, "however he was not entitled to a de novo review of an argument never raised"). *See generally United States v. Valencia–Copete,* 792 F.2d 4, 6 (1st Cir.1986); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603, 605 (1st Cir.1980).

Provided the defendant has objected to all the determinations addressed by the Magistrate, the Court shall make a *de novo* determination of the R & R.

### III

■ Not all state interaction with its citizens rises to the constitutionally-protected levels, of a "stop" or "seizure." *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991)(collecting cases). Police may approach citizens in public spaces and ask them questions without necessarily triggering the protections of the Fourth Amendment. *Id.* Indeed, the Fourth Amendment protections are not activated when, in light of all circumstances, a reasonable citizen would have felt free to terminate the police intervention and a court determines that he could have proceeded along his way. *Bostick,* 501 U.S. at 439, 111 S.Ct. 2382; *United States v. Sealey,* 30 F.3d 7, 9 (1st Cir. 1994).

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

*Adams v. Williams,* 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)(Rehnquist, J.) (internal citations omitted). If an officer does not exert physical force to obtain an individual's submission to a show of authority, no "seizure" occurs. *United States v. Young,* 105 F.3d 1; 6 (1st Cir.1997). The Supreme Court has established that an officer may conduct a brief, warrantless, investigatory stop of an individual when the officer has a reasonable suspicion that criminal activity is afoot, without violating the Fourth Amendment. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The "reasonableness" of the intervention will depend "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977).

■ An "investigative stop," or a "Terry stop," occurs when a police officer, acting on **reasonable suspicion** of criminal activity, briefly detains a citizen to confirm or dispel his suspicion. *Id.* The Supreme Court has in recent years explained that this type of investigative stop is not confined to the momentary, on-the-street detention accompanied by a frisk for weap-

ons, and has widened this exception to encompass other circumstances where officers may make brief investigative stops or seizures of individuals upon reasonable suspicion that they may have committed, are committing, or are about to commit a crime. *See United States v. Quinn,* 815 F.2d 153, 156 (1st Cir.1987). However, there is no mechanical formula to facilitate the distinction between such investigative stops, on the one hand, and those detentions, on the other, which though not technical, formal arrests, are the "equivalent" to an "arrest" and therefore require probable cause. *Id.* A formal "arrest," nonetheless, occurs when an officer, acting on probable cause that an individual has committed a crime, detains that individual as a suspect. *Id.*

 Furthermore, the First Circuit Court has specifically rejected the argument that "every incidence of physical contact, even *de minimis,* between a police officer and a citizen, constitutes an arrest requiring probable cause." *Id.; United States v. Zapata,* 18 F.3d 971, 977 (1st Cir.1994). Moreover, the First Circuit Court has been emphatic in explaining that "[p]arsing whether any given seizure constitutes an arrest or a lesser seizure ... proves a difficult task." *Young,* 105 F.3d at 7. Therefore, police intervention will rise to the level of an arrest only when a reasonable man in the subject's position would have understood his situation to be tantamount to an "arrest," in light of the **totality of the circumstances.** *Berkemer v. McCarty,* 468 U.S. 420, 442, 104 S.Ct. 3138, 3151–52, 82 L.Ed.2d 317 (1984). The phrase "totality of the circumstances" essentially means that a case-by-case determination is required from the Courts. Accordingly, "[w]hether police activity is reasonable in any particular context depends on the facts which are unique to that incident." *United States v.*

*Kimball,* 25 F.3d 1, 6 (1st Cir.1994). Again, reasonableness will depend "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers," *Mimms,* 434 U.S. at 109, 98 S.Ct. at 332, and thus a case-by-case inquiry is required. To determine whether reasonable suspicion exits, the court "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu,* 534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citation omitted); *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

 As the Supreme Court recently reiterated, that *per se* rules are inappropriate in the Fourth Amendment context. The proper inquiry—stated the Court— "necessitates a consideration of all the circumstances surrounding the encounter." *See United States v. Drayton,* 536 U.S. 194, 122 S.Ct. 2105, 2111, 153 L.Ed.2d 242 (2002)(*citing Florida v. Bostick,* 501 U.S. 429, 439, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991))(internal quotations omitted).

Factors that can elevate a non-arrest seizure to a *de facto* arrest requiring probable cause include extending an investigative stop beyond the time necessary to confirm or dispel reasonable suspicion, and physically blocking the suspect's exit such that a reasonable person would not feel free to leave. The use of guns and the presence of more than one police officer, however, do not necessarily convert an investigative stop into an arrest. Above all else, our cases in this area evince the fact specific nature of the inquiry.

*Young,* 105 F.3d at 7–8. For example, the First Circuit Court, in *Quinn,* explained that **the mere presence of several offi-**

cers and the blocking of an individual's car does not, in itself, convert a simple investigative stop into an arrest. *See Quinn,* 815 F.2d at 156–57. In fact, not even the use of a drawn gun by a police officer converts an investigative stop into an arrest. *United States v. Trullo,* 809 F.2d 108, 113 (1st Cir.1987), *cert. denied,* 482 U.S. 916, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). "An action tantamount to arrest has taken place if the officers' conduct is more intrusive than necessary for an investigative stop." *United States v. Rose,* 731 F.2d 1337, 1342 (8th Cir.1984).

■ Among many factors, courts may consider in examining the "reasonableness" of police intervention in an investigative stop, is whether the facts occurred in a "high-crime" area, and whether the police officers saw a "bulge" in the defendant's "waistband." *See, e.g., United States v. Hunter,* 291 F.3d 1302 (11th Cir.2002)(the presence of a visible suspicious bulge on an individual may be considered in the totality of circumstances); *United States v. Davis,* 94 F.3d 1465, 1470 (10th Cir.1996)(indicating that the presence of a "suspicious bulge" can support an investigative stop).

■ The Court today believes that **reasonable suspicion**—as opposed to probable cause—is sufficient to render the warrant requirement unnecessary, pursuant to all the circumstances of this case. After all, "[t]he touchstone of the Fourth Amendment is reasonableness...." *United States v. Knights,* 534 U.S. 112, 122 S.Ct. 587, 591, 151 L.Ed.2d 497 (2001). In cases such as this one, the reasonableness of a search is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton,* 526 U.S. 295, 300, 119 S.Ct. 1297, 143 L.Ed.2d 408 (1999). As stated above,

when dealing with warrantless searches, ordinary Fourth Amendment analysis requires consideration of the **totality of the circumstances.** *Knights,* 122 S.Ct. at 593 ("Fourth Amendment analysis ... considers all the circumstances of a search...."). The totality of the circumstances must support a finding of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the stop and frisk. *See Terry,* 392 U.S. at 21, 88 S.Ct. 1868, 20 L.Ed.2d 889. And, again, reasonableness depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Pennsylvania v. Mimms,* 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *Arvizu,* 122 S.Ct. at 750–51 (citation omitted).

When considering the totality of the circumstances, a court may not consider each fact in isolation. *Arvizu,* 122 S.Ct. at 750–51 (2002) (rejecting the approach taken by the Ninth Circuit in attempting to delimit the extent to which certain factors may be considered as a type of "divide-and-conquer analysis."). The Supreme Court explained in *Arvizu* that reasonable suspicion may exist even if each fact alone is susceptible to an innocent explanation. *Id.* at 751, 753. Totality of the circumstances takes into account every possible element of suspicion. Furthermore, "[a]lthough the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such standard reasonable." *Id.* 122 S.Ct. at 592. The circumstances of the present

case lead the Court to believe that reasonable suspicion is sufficient to render the warrant requirement unnecessary.

The Court is convinced that the totality of circumstances in this case, and the collective knowledge of the officers involved in the operation, show that the stop, search, seizure and subsequent arrest of the defendant was firmly premised on reasonable suspicion. In other words, the initial stop of the vehicle was legal, pursuant to the Fourth Amendment; thus, the eventual seizure of evidence, by virtue of the stop, was legally obtained. Thus, after reviewing the totality of the circumstances, the Court rejects and denies the defendants' motion to suppress.

A review of the record reveals several factors which support the conclusion that there was reasonable suspicion to intervene the defendant, without a warrant. The following are several factors supporting the Court's conclusion that there was reasonable suspicion to stop the Mercedes Benz SUV being driven by defendant. In this case, the Court finds that pursuant to the vast law enforcement experience of the officers involved in this case, and particularly of Deputy Marshal Vizcarrondo, buttresses the conclusion that there was reasonable suspicion to believe that defendant was involved in criminal activity.

Vizcarrondo saw when the defendant late on the night of the arrest, arrived in a late model, black, Mercedes Benz SUV. (Docket No. 44, Exhibit 3). He then continued observing the SUV as it parked near to his car, at a gas pump. Then he saw when the defendant suspiciously bent backwards and stuck something underneath his shirt and stepped out of the car, and then started walking towards the gas station's office. Through his experience as a police officer he knew this was a high crime area, that it was late at night, and thus that is was reasonable suspect that the defendant had a firearm on his waist. These factors clearly support officer's Vizcarrondo reasonable suspicion. Vizcarrondo's unverified tip may have been insufficient for a narcotics arrest or search warrant, but the information carried sufficient indicia or reliability to justify the SUV's Terry stop. But these are not the only factors pointing to **reasonable suspicion.** Other facts support this conclusion. For example, officer Vizcarrondo had previously intervened in a seizure carried at this gas station, as well as at a the neighboring shopping center, leading him to believe through the years that this location was a high crime area.[1] Adding this to the other circumstances, based in his police experience, officer Vizcarrondo called the Police of Puerto Rico Headquarters because he wasn't in a position to intervene with the defendant by himself. And again, Vizcarrondo's unverified tip may have been insufficient for a narcotics arrest or search warrant, but the information carried sufficient indicia or reliability to justify the SUV's Terry stop.

In these days, where the crime rate is raising faster than ever, the police agents are at times finding themselves in situations that require them to act for the caution and care of the citizens. A policeman who lacks the precise level of information necessary for probable cause to arrest is not required to simply shrug his shoulders and allow a crime to occur or a criminal to escape. *Adams,* 407 U.S. at 145, 92 S.Ct. at 1923. Moreover, the bulge in the defendant's garments allowed Vizcarrondo to conclude, with his experi-

---

1. *See United States v. Stanley,* 915 F.2d 54, 56–57 (1st Cir.1990); *see also Hunter,* 291 F.3d at 1305–07.

ence, that the defendant was armed and thus posed a serious and present danger to the safety of the officer and the community. *Mimms*, 434 U.S. at 112, 98 S.Ct. at 334. Therefore, the totally of the circumstances presented here, allowed Deputy Marshal Vizcarrondo to have reasonable suspicion that a criminal activity could potentially occur at the gas station, when he saw the defendant placing something under his shirt and walking to the gas' station office, at night in a high crime area. A brief stop of the defendant, who was clearly a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, was most reasonable in light of the facts known to the officer at the time. *Adams*, 407 U.S. at 145, 92 S.Ct. at 1923. Fortunately, nothing occurred at the gas station; but because the agent truly had the reasonable suspicion that the defendant was carrying and concealing a weapon as he entered the gas station's office, he called the Puerto Rico police station, in order to prevent criminal activity.

The Court deems that, pursuant to the totality of the circumstances, officers Vizcarrondo, Quiles and Figueroa, clearly had reasonable suspicion to believe that a crime was being committed or would later occur. *Knights*, 122 S.Ct. at 592–593. Again, **it is not necessary that an officer have personal knowledge** of all the items of information which, taken together, creates reasonable suspicion to briefly detain someone without a warrant. *Id.* It is enough that "the collective knowledge and information of all of the officers involved" establishes reasonable suspicion that a crime was being committed. *Rose*, 541 F.2d at 756. But more importantly, the interest "in apprehending violators of the criminal law, thereby protecting potential victims of criminal enterprise," and particularly those that are doing so in plain view,

on the public streets of our cities, lead the Court to conclude that reasonable suspicion is constitutionally sufficient to render the requirement of a warrant unnecessary. *Id.*

The defendant argues that officer Vizcarrondo's actions were born only from the hunch that a concealed gun was stuffed under his shirt, but that he did not verify this suspicion. The defendant alleges that this hunch alone is insufficient to justify Vizcarrondo's actions and the eventual intervention of the other officers. The Court has reason to believe that the presence of a "suspicious bulge" can support an investigative Terry stop. *See Davis*, 94 F.3d at 1470. But fortunately, the Court needs not decide this question because the totality of the circumstances supports the conclusion that the agents had reasonable suspicion to intervene. Moreover, the defendant must be mindful that the subjective intentions of an officer does not preclude the Court's **independent** obligation to ascertain the totality of the circumstances. "As long as there is a valid reason for a stop, the officer's subjective motivation is irrelevant." *See, e.g., United States v. Pringle*, 751 F.2d 419, 425 (1st Cir.1984)(motivation for boarding is irrelevant; the test is whether an objective basis existed). Furthermore, the Supreme Court of the United States has been "unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers." *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)(the Supreme Court "foreclose[d] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved").

Probable cause as well as reasonable suspicion, must be determined in light of the collective knowledge of the law enforcement officers involved in an investigation, *Maryland v. Garrison*, 480 U.S. 79,

85, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987)("[T]he existence of probable cause is to be evaluated on the basis of the collective information of the law enforcement officers engaged in a particular investigation"), pursuant to an objective view of the facts. *Knights,* 122 S.Ct. at 593 (reasonable suspicion analysis "considers all the circumstances of a search"); *see also United States v. Diallo,* 29 F.3d 23, 25–26 (1st Cir.1994)("probable cause must be determined in light of the information known to the police at the time of the arrest"). In this case, the Court is convinced that, pursuant to the totality of the circumstances, and all of the above factors, Officers Quiles and Figueroa, had reasonable suspicion to stop the SUV Mercedes and search the vehicle (the fact that defendant did not respond to first siren call, is yet another factor to be considered under the "reasonable suspicion" doctrine, authorizing a Terry stop). *See Drayton,* 122 S.Ct. at 2111. The Court reaches this conclusion notwithstanding that distinguishing whether any given seizure constitutes an arrest or a lesser seizure is not an easy endeavor. *Zapata,* 18 F.3d at 975.[2]

Finally, in support of suppression, the Defendant filed a motion "submitting supplemental citation of authority" (Docket No. 49), in which he cites to the case from the Supreme Court of Puerto Rico, *People v. Rosado,* 62 P.R.R. 187 (1943), in which that court reversed a conviction, and held that the search of an individual, based merely on the fact that the arresting officer saw a "bulge" on his person, was insufficient to support a warrantless search, and thus illegal. The Court cannot admit this case as authority, and rejects Defendant's contention entirely. First of all, the case cited as authority is not federal precedent, to which this federal Court is bound to follow. Secondly, assuming arguendo its applicability to this case, the case of *Rosado* cited by Defendant was decided in 1943, well before the *Terry* doctrine was established by the U.S. Supreme Court, in 1968. Moreover, even thought the Supreme Court of Puerto Rico has mentioned on several occasions the *Terry* doctrine, it has never incorporated or adopted said doctrine as applicable in Puerto Rico. Indeed, in the case of *Pueblo en Interes Del*

---

2. In sum of the totally of the circumstances reflects that the officers had knowledge of the following facts:

a) Officer Vizcarrondo was situated at a gas station, which pursuant to his experience, is located in a high crime area (Transcript, p. 6, Docket No. 41);

b) It was late at night when the facts took place (10:15–10:30 p.m., Transcript, p. 10, Docket No. 41);

c) When Vizcarrondo was gassing his vehicle, he saw the defendant drive into the gas station in a vehicle, namely, a black Mercedes Benz SUV, which parked next to his car. The gas station was well lit and hence Vizcarrondo could observed what was occurring in the SUV (Transcript, pp. 12–14, Docket No. 41);

d) Agent Vizcarrondo observed when the defendant came to a full stop; he then bent backwards and placed something underneath his shirt (Transcript, p. 13, Docket No. 41);

e) After the defendant placed suspiciously something in his waist band, officer Vizcar-

rondo observed when he stepped out the car and started walking towards the gas station (Transcript, p. 14, Docket No. 41);

f) Officer Vizcarrondo believed with his experience that the defendant was carrying a firearm and immediately, with his cell phone, called the FBI switchboard, and requested the operator, to run the license plate of the defendant's vehicle (Transcript, p. 16, Docket No. 41);

g) Later, after defendant gassed the car and left the gas station, the Puerto Rico police officers following the defendant, then activated the siren of their unit seeking to stop the defendant. The defendant refused to stop at that moment (Transcript, p. 18, Docket No. 41);

h) The Puerto Rico officers activated their siren a second time before the defendant came to a full stop (Transcript, p. 18, Docket No. 41).

*Menor N.O.R,* 136 D.P.R. 949, 963, 1994 WL 909551 n. 14 (1994), the Supreme Court of Puerto Rico emphasized and explained that the future of the Terry doctrine in Puerto Rico is yet uncertain. To date, this still remains true. *See* Olga Elena Resumil, "Derecho Procesal Penal," 69 Rev. Jur. U.P.R. 623, 638–639 (2000). Finally, the *Rosado* case was decided pursuant to a reasonable cause for arrest doctrine, and not under a reasonable suspicion standard under Terry. Inasmuch as this federal Court is certainly bound to follow the *Terry* doctrine established by the U.S. Supreme Court, the contention of the Defendant, and his supplemental citation, falls short of the mark.

In retrospect, the defense has focused exclusively on the cases cited by the Government, and the fact that Vizcarrondo saw a suspicious "bulge" on the defendant's person, which he believed was a firearm. Defendant argue that the "bulge" didn't materialize into any activity that would had warranted further intervention. The defendant however fails to recognize that the totality of circumstances, as constitutionally required, point to reasonable suspicion which justified the agents' intervention. Accordingly, the Court has reached the conclusion that suppression is not warranted because the agents' intervention was legally supported, under the totality of circumstances.

### IV

In conclusion, the recommendations made by Magistrate Gelpi are **ADOPTED** *in toto.* (Dockets No. 37). **WHEREFORE,** the Court hereby **DENIES** Santiago–Vega' motion to suppress (Docket No. 26).

**IT IS SO ORDERED.**