**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2007

(Argued:  June 10, 2008                                    Decided: January 15, 2010
                                                          Errata Filed: February 9, 2010)

Docket Nos. 05-5612-cv, 05-5310-cv


- - - - - - - - - - - - - - - - - - - - - - - - - - - -X

In re ASSICURAZIONI GENERALI, S.P.A.

Dr. Thomas Weiss, Erna Birnbaum Gottesman and Martha Birnbaum Younger,

  *Plaintiff-Appellant*s,

v.

Assicurazioni Generali, S.p.A.,

  *Defendant-Appellee*.

Edward David, as Personal Representative of the Estate of David David,

  *Plaintiff-Appellant*,

v.

Assicurazioni Generali, S.p.A.,

  *Defendant-Appellee.*[*]

---

[*]The Clerk of Court is instructed to amend the official caption as set forth above.

1

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before:    LEVAL, CALABRESI, and POOLER, *Circuit Judges*.

Plaintiffs appeal from district court's dismissal of their suits seeking payment of benefits on insurance policies purchased by their family members from defendant insurer in the years leading up to the Holocaust. The United States District Court for the Southern District of New York (Mukasey, *J.*) dismissed the suits, relying on *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003), and concluding that plaintiffs' state-law claims were preempted by the foreign policy of the United States favoring resolution of such claims in the International Commission on Holocaust Era Insurance Claims. The Court of Appeals (Leval, *J.*) concludes that *Garamendi* controls, and affirms the judgment.

WILLIAM M. SHERNOFF, Shernoff Bidart & Darras, Claremont, California (Nancy Sher Cohen, Warrington S. Parker III, Reynold Siemens, John C. Ulin, Doug M. Keller, Peggy J. Williams, and Esta L. Brand, Heller Ehrman LLP, Lawrence Kill and Linda Gerstel, Anderson Kill & Olick, P.C., Robert A. Swift and Joanne Zack, Kohn, Swift & Graf, P.C., Caryn Becker, Lieff, Cabraser, Heimann & Bernstein, LLP, Joel Cohen and Evangeline F. Garris, Shernoff Bidart & Darras, Samuel J. Dubbin, Dubbin & Kravetz, LLP, Thomas R. Fahl, Flanner, Stack & Fahl LLP, *on the brief*), *for Appellants*.

SAMUEL J. DUBBIN, Dubbin & Kravetz, LLP, Miami, Florida, *for Appellants Dr. Thomas Weiss, Erna Birnbaum Gottesman, and Martha Birnbaum Younger*.

THOMAS R. FAHL, Flanner, Stack & Fahl LLP, Brookfield, Wisconsin, *for Appellant Edward David*.

MARCO E. SCHNABL, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York (Kenneth J. Bialkin, Barry H. Garfinkel, Peter Simshauser, and Lance A. Etcheverry, Skadden, Arps, Slate, Meagher & Flom LLP, Franklin B. Velie, Sullivan & Worcester LLP, *on the brief*), *for Appellee*.

Sharon Swingle, Attorney, United States Department of Justice, Civil Division, Appellate Staff, Washington, D.C. (John B. Bellinger, III, Legal Adviser, United States Department of State, Gregory G. Katsas, Assistant Attorney General, Mark B. Stern and Benjamin M. Shultz, Attorneys, Department of Justice, Civil Division, Appellate Staff, *on the brief*), *for Amicus Curiae* United States of America.

Benjamin M. Shultz, Attorney, United States Department of Justice, Civil Division, Appellate Staff, Washington, D.C. (Harold Hongju Koh, Legal Adviser, United States Department of State, Tony West, Assistant Attorney General, Preet Bharara, United States Attorney for the Southern District of New York, David S. Jones, Assistant United States Attorney, Mark B. Stern and Sharon Swingle, Attorneys, United States Department of Justice, Civil Division, Appellate Staff, *on the briefs*), *for Amicus Curiae* United States of America.

Yevgeny Gurevich, United States Congress, Committee for Foreign Affairs, Washington, D.C., *for Amici Curiae* Representatives Ros-Lehtinen, Wexler, and Chabot.

Michael D. Ramsey, University of San Diego Law School, San Diego, California, *for Amici Curiae* Professors of Constitutional Law and Foreign Relations Law of the United States.

LEVAL, *Circuit Judge*:

Plaintiffs Dr. Thomas Weiss, Erna Birnbaum Gottesman, and Martha Birnbaum Younger ("the Weiss Plaintiffs") and Plaintiff Edward David ("David") appeal from the judgment of the United States District Court for the Southern District of New York (Mukasey, *J.*), which dismissed their claims. Plaintiffs are beneficiaries of insurance policies purchased by their ancestors in the years leading up to the Holocaust from Defendant Assicurazioni Generali, S.p.A. ("Generali"), an Italian insurance company. Plaintiffs brought state-law claims alleging breach of the insurance contracts, based on Generali's refusal to pay benefits under those policies. These cases and others were consolidated for pre-trial proceedings. The district court granted Generali's motion to dismiss based on the Supreme Court's decision in *American Insurance Association v. Garamendi*, 539 U.S. 396 (2003), which held that the Plaintiffs' state-law claims were preempted by the foreign policy of the United States, which favors resolution of Holocaust-era insurance claims in the International Commission on Holocaust Era Insurance Claims ("ICHEIC"), an international claims resolution organization founded by private insurance companies and supported by the United States and other foreign government entities. Because we agree with the district court that *Garamendi* controls this case, we affirm.

## BACKGROUND

Generali was founded by Jewish merchants in 1831 in Trieste, Italy. In the time between World War I and World War II, Generali operated in Austria, Hungary, Czechoslovakia, Poland,

and Yugoslavia. In the late between-Wars period, many families purchased insurance policies from Generali believing this would provide protection against the rise of Nazi power. According to the complaints, Generali betrayed the policyholders by cooperating with the Nazi regime and refusing to pay the beneficiaries of the insurance policies purchased by Jews and other persecuted minorities.

After World War II, when the victorious Western Allies took steps to reestablish the sovereignty of the defeated Germany, there was a concern that reparations would economically cripple the new Federal Republic of Germany. *Garamendi*, 539 U.S. at 403. In the London Debt Agreement, the allies agreed to "put off consideration of claims arising out of the second World War . . . until the final settlement of the problem of reparation." *Id.* at 403-04 (internal quotation marks and brackets omitted). Notwithstanding this moratorium, the German government paid out over 100 billion Deutsche marks in reparations as of 2000. *Id.* at 404. Those payouts, however, did not cover certain claimants and certain types of claims. *Id.* In 1996, the German courts interpreted the treaty reunifying East and West Germany as "lifting the London Debt Agreement's moratorium on Holocaust claims by foreign nationals." *Id.* at 405. After this decision, many lawsuits that could not have been brought previously were filed against companies doing business in Germany during the Nazi era.

In July 2000, the United States announced an agreement with Germany in which the German government agreed to enact legislation to establish a foundation that would be used to compensate all victims who suffered at the hands of German companies during the Nazi era. *Id.*

In return, the United States agreed that whenever a German company was sued on a Holocaust-era claim in an American (state or federal) court, the government of the United States would submit a statement of interest to the court explaining that "it would be in the foreign policy interests of the United States for the [German] Foundation to be the exclusive forum and remedy for the resolution of all asserted claims against German companies arising from their involvement in the National Socialist era and World War II." *Garamendi*, 539 U.S. at 406 (internal quotation marks omitted) (quoting 39 Int'l Legal Materials 1298, 1303 (2000)). The "German Foundation pact" was a model for similar agreements with Austria and France. There was however, no similar agreement with Italy.

With respect to insurance claims, the agreement specified that the German foundation would work with the ICHEIC to handle insurance claims. The ICHEIC was formed in 1998 by "several European insurance companies, the State of Israel, Jewish and Holocaust survivor associations, and the National Association of Insurance Commissioners," *id.* at 406-07, to negotiate with European insurers to provide information about unpaid policies issued to Holocaust victims between 1920 and 1945, and to settle any claims that arose in the Holocaust era under these policies, *id.* at 407; ICHEIC, Memorandum of Understanding ¶ 4 (Aug. 25, 1998), *available at* http://www.icheic.org/pdf/ICHEIC_MOU.PDF. To date approximately $300 million dollars have been offered or awarded to more than 48,000 claimants as a result of the ICHEIC process. *See* ICHEIC, http://www.icheic.org (last visited Dec. 17, 2009).

**PROCEDURAL HISTORY**

The Weiss Plaintiffs filed suit in Florida state court, which Generali removed to federal court. David filed suit in the Eastern District of Wisconsin. Both complaints sought damages for unpaid insurance claims under policies issued by Generali between 1920 and 1941. In November 2000, these suits, together with numerous others, were transferred by the Judicial Panel on Multidistrict Litigation to the district court for the Southern District of New York for consolidated pre-trial proceedings. In an initial opinion, issued prior to the Supreme Court's decision in *Garamendi*, the district court denied Generali's motion to dismiss on *forum non conveniens* grounds. *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 228 F. Supp. 2d 348 (S.D.N.Y. 2002).

In 2003, the Supreme Court decided *Garamendi*. In that case, a trade association and a group of insurance companies, including Generali, brought suit seeking to enjoin enforcement of California's Holocaust Victim Insurance Relief Act ("HVIRA"), which required insurers to disclose the details of insurance policies sold in Europe between 1920 and 1945 or face suspension of its license to do business in the state. *Garamendi*, 539 U.S. at 409-10. The United States filed an *amicus* brief stating as its foreign policy that the ICHEIC should be the exclusive remedy for insurance claims based on policies from the Holocaust era. Brief of the United States as *Amicus Curiae* Supporting Petitioners at 2-3, *Garamendi*, 533 U.S. 396 (No. 02-722), 2003 WL 721754. The Supreme Court ruled that the HVIRA interfered with and was therefore preempted by the foreign policy of the United States to "encourage European insurers to work with the ICHEIC to develop acceptable claim procedures, including procedures governing

7

disclosure of policy information." *Id.* at 421.

Relying on *Garamendi*, the district court dismissed all actions in October 2004. *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 340 F. Supp. 2d 494 (S.D.N.Y. 2004). Each plaintiff filed a separate appeal. The class action plaintiffs in the consolidated proceedings entered into a settlement agreement with Generali.[1] We then stayed all the remaining appeals. *In re Assicurazioni Generali, S.p.A.*, No. 05-5602-cv *et al.* (2d Cir. Sept. 11, 2006) (order). In November 2007, we lifted the stay on the appeals by the plaintiffs in the nineteen remaining non-class action cases. *In re Assicurazioni Generali S.p.A.*, No. 04-6161-cv *et al.* (2d Cir. Nov. 7, 2007) (order).

After oral argument, we requested the advice of Secretary of State Condoleezza Rice "on the question whether court adjudication of [the] Holocaust era claims against Generali would conflict with the foreign policy of the United States." *In re Assicurazioni Generali S.p.A.*, No. 05-5602-cv *et al.* (2d Cir. Aug. 1, 2008) (letter). The Government responded that "[i]t has been and continues to be the foreign policy of the United States that the [ICHEIC] should be regarded as the exclusive forum and remedy for claims within its purview" and that claims against Generali, as "one of the original ICHEIC companies and an active participant in its operations, fall within the category United States policy seeks to address." Letter of Sharon Swingle, Oct. 30, 2008 ("Swingle Letter"), at 1. Because of the possibility of change of foreign policy after the

_____

[1]After further proceedings, approval of that settlement was affirmed by our court. *Rubin v. Assicuazioni Generali S.p.A.*, 290 F. App'x 376 (2d Cir. 2008).

intervening change of administration in 2009, we then inquired of the new Secretary of State Hillary Rodham Clinton whether, in the new administration, the foreign policy of the United States continued unchanged, *In re Assicurazioni Generali S.p.A.*, Nos. 05-5612-cv, 05-5310-cv (2d Cir. July 29, 2009) (letter), and received a response that the position of the United States "continues to be that set out in [its] original letter brief," Letter of Benjamin M. Shultz, Oct. 27, 2009 ("Shultz Letter"), at 1. In March 2009, all plaintiffs other than the Weiss Plaintiffs and David settled with Generali, and their appeals were dismissed. *In re Assicurazioni Generali S.p.A.*, No. 05-5612-cv *et al.* (2d Cir. Mar. 6, 2009) (order).

## DISCUSSION

We review *de novo* a district court's application of preemption principles. *Premium Mortgage Corp. v. Equifax, Inc.*, 583 F.3d 103, 106 (2d Cir. 2009).

## I. Applicability of *Garamendi*

In *Garamendi*, the Supreme Court explained that state law "must give way" to the foreign policy of the United States, as set by the President, where there is "evidence of clear conflict between the policies adopted by the two." *Garamendi*, 539 U.S. at 420-21. Based on the *amicus* brief of the United States and statements made during negotiations between the United States and Germany, Austria, and France regarding Holocaust-era insurance claims, the Court concluded that the "consistent Presidential foreign policy has been to encourage European governments and companies to volunteer settlement funds in preference to litigation or coercive sanctions," and, in the insurance context specifically, "to encourage European insurers to work with the ICHEIC to

9

develop acceptable claim procedures." *Id.* at 421.

California's HVIRA, "by making exclusion from a large sector of the American insurance market the automatic sanction for noncompliance with the State's own policies on disclosure," which required broader disclosure than the ICHEIC, "undercut[] the President's diplomatic discretion and the choice he . . . made in exercising it." *Id.* at 423-24. Because enforcement of the California law would mean that the President could not wield the full "'coercive power of the national economy'" as a tool of diplomacy in negotiating a process for settling claims, the Court concluded that the HVIRA "'compromise[d] the very capacity of the President to speak for the Nation with one voice in dealing with other governments' to resolve claims against European companies arising out of World War II." *Id.* at 424 (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 377, 381 (2000)).

*Garamendi* involved only disclosure requirements. The HVIRA's disclosure requirement, although not directly in conflict with government's policy to encourage use of the ICHEIC to resolve Holocaust-era insurance claims, nonetheless undermined the Government's objective by "thwarting the Government's policy of repose for companies that pay through the ICHEIC" and by undercutting privacy protections of European allies. *Id.* at 425. The Court therefore found it sufficiently disruptive to justify preemption. The cases before us, in contrast, essentially seek enforcement of the plaintiffs' claimed contract rights against Generali under state law. Unlike the HVIRA's disclosure requirement, whose effect on foreign policy is only oblique, such law suits are *directly* in conflict with the Government's policy that claims should be

resolved exclusively through the ICHEIC. If, as the Supreme Court held in *Garamendi*, a state disclosure requirement conflicts sufficiently to be preempted by the national foreign policy of channeling Holocaust-era insurance claims through the ICHEIC, then, *a fortiori*, a state law suit to enforce a Holocaust-era insurance claim is preempted by that policy, as well.

Plaintiffs put forward several arguments in an effort to distinguish *Garamendi*. First, they point out that Generali is an Italian company and that Italy, unlike Germany, Austria, and France, has not entered an executive agreement with the President of the United States regarding the processing of Holocaust-era insurance claims. The Court in *Garamendi,* however, did not find that the United States policy of encouraging resolution of Holocaust-era insurance claims through the ICHEIC depended on the existence of executive agreements. Rather, the Court viewed the executive agreements as the product of the policy. The agreements, and statements of interest issued by the Government pursuant to them, illustrate or express the national position, rather than define it. *See, e.g.*, *id.* at 421-22 (stating that the agreements "illustrate" and "express[]" the President's policy, and quoting statements of officials regarding the policy underlying the agreements, in describing "evidence" of the policy). A further indication that the Court did not view the existence of an executive agreement as a prerequisite is that Generali was one of the plaintiffs in *Garamendi*, and was not excluded from the judgment on the ground that it is an Italian company and Italy is not party to an executive agreement.[2]

---

[2]We find nothing inconsistent with this position in the reference in *Medellin v. Texas*, 128 S. Ct. 1346 (2008), to "cases in which [the Supreme Court] has upheld the authority of the President to settle foreign claims pursuant to an executive agreement." *Id*. at 1371.

11

In any event, to erase any such doubt, we solicited the advice of the Secretary of State (in two administrations) on the foreign policy of the United States. The Government has twice made perfectly clear that "[i]t has been and continues to be the foreign policy of the United States that the [ICHEIC] should be regarded as the exclusive forum and remedy for claims within its purview," and that this policy applies to claims against Generali. Shultz Letter at 1; Swingle Letter at 1.

Plaintiffs next argue that strong state interests underlie the laws that form the basis for their suit, and therefore, unlike in *Garamendi*, the balance between state and federal policy tips in their favor. This argument is premised on a misunderstanding of *Garamendi* and preemption law. As the *Garamendi* Court reaffirmed, "[an] express federal policy and [a] clear conflict raised by [a] state statute are alone enough to require state law to yield." *Garamendi*, 539 U.S. at 425. The Court went on to note that, if the conflict were less clear, it would nevertheless be resolved in the federal government's favor because of the weakness of the state's interest in regulating disclosure of Holocaust-era insurance policies. *Id.* In this case, the conflict between the federal policy that the ICHEIC should be the exclusive forum for resolving Holocaust-era insurance claims and Plaintiffs' attempt to adjudicate their Holocaust-era insurance claims under state law is even more clear than the conflict in *Garamendi*, which involved only a disclosure requirement, and not a state law suit to enforce the insurance claim. The state law must yield to the federal policy, regardless of the importance of the interests behind the state law.

Finally, Plaintiffs point out that the ICHEIC's December 31, 2003 deadline for accepting

12

claims has passed, so that dismissal of their claims will deny them the opportunity to pursue those claims in any forum. This argument is premised on a misunderstanding of the Government's policy. As the Government made clear in its letters to the court, "[i]t was never the foreign policy of the United States that claims should merely be held in abeyance pending conclusion of the ICHEIC process." Swingle Letter, at 8. The policy is rather that the ICHEIC "should be regarded as the *exclusive* forum and remedy for claims with its purview." *Id.* at 1 (emphasis added). Permitting state-law claims to proceed now that ICHEIC has ceased operations directly conflicts with that policy goal. *See id.* at 8 ("[I]t would undermine future efforts to secure voluntary compensation agreements if ICHEIC participants became subject to litigation as soon as ICHEIC had concluded."); Shultz Letter, at 5. If the ICHEIC door has closed on plaintiffs, it is because they chose to allow it to close.[3]

Accordingly, we hold under authority of *Garamendi* that Plaintiffs' claims, which fall within the scope of the ICHEIC process, are preempted by the foreign policy of the United States.

**II. The Weiss Plaintiffs' Motion to Amend**

The Weiss Plaintiffs argue that the district court erred in denying their motion after judgment to amend their complaint to add a claim under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. The filing of an amended complaint is not

---

[3]In any event, it is apparently not entirely correct that the ICHEIC process is closed. The Government's letter informs us that Generali and other ICHEIC participants have agreed to continue processing claims according to the relaxed standards of proof developed by the ICHEIC. Shultz Letter, at 4-5

permissible once a judgment is entered unless the judgment is set aside or vacated pursuant to Rule 59 of the Federal Rules of Civil Procedure. *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 244 (2d Cir. 1991). A district court's denial of a Rule 59 motion to alter or amend a judgment is reviewed for abuse of discretion. *See State Trading Corp. of India, Ltd. v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990). When the plaintiff had the opportunity to amend the complaint earlier but waited until after judgment, a court may "exercise its discretion more exactly." *Id.* Generally, district courts will only amend or alter a judgment pursuant to Rule 59 "to correct a clear error of law or prevent manifest injustice." *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004) (internal quotation marks omitted).

The Weiss Plaintiffs give no good reason for failing to seek leave to amend earlier in the case. Indeed, the record indicates that they contemplated adding a RICO claim at least three years before the court entered judgment. The district court acted well within its discretion in denying the motion.

**III. David's Allegation of a Cancelled Policy**

In his brief on appeal, David contends that his complaint shows that his ancestor's insurance policy was "cancelled prior to the Holocaust Era as that era is defined by the ICHEIC rules" and therefore his claim was not eligible for adjudication by the ICHEIC. Although the ICHEIC generally covers claims based on policies sold between 1920 and 1945, it does not cover claims based on policies that were cancelled prior to the start of the "Holocaust era" as defined in its claims-processing rules. *See* ICHEIC, Processing Guide, at 32, 46 (June 22, 2003), *available*

14

*at* http://www.icheic.org/pdf/ICHEIC_CPG.pdf. The ICHEIC Processing Guide identifies the start of the Holocaust era in Poland, where David's ancestor lived, as 1939. *Id.* at 51. The United States, in its first letter to this court, noted that adjudication of a lawsuit arising out of an insurance policy cancelled before the Holocaust era (as defined by the ICHEIC) does not conflict with foreign policy. Swingle Letter, at 9 n.5.

David's complaint is unclear as to potentially determinative aspects of the timing of his ancestor's death and the duration of the insurance policy. The complaint alleges that David's insured ancestor "died in a concentration camp as the result of actions of Nazi Germany" and that "the policy was in full force and effect and all premiums were current at the time of his death," while also alleging that Generali advised David in 1999 that the policy was cancelled "sometime prior to 1936." There is no clear allegation that David's claim falls outside the Holocaust era as defined by the ICHEIC and therefore was not subject to adjudication by that body. Accordingly, we affirm the district court's dismissal of the complaint. On the other hand, it may be that the claim, although inartfully pleaded, in fact falls outside the scope of the ICHEIC process. We instruct the district court to permit David to replead if, consistent with the requirements of Rule 11 of the Federal Rules of Civil Procedure, he is able to plead a claim that falls outside the scope of the ICHEIC.

## **CONCLUSION**

For the foregoing reasons, we AFFIRM the judgment of the district court. With respect to Plaintiff David, the district court is instructed to permit the filing of an amended complaint, if the new pleading conforms to the requirement set forth in this opinion.